EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Agente Roberto L. Gerena Betancourt #5330<br><br>Recurrido<br><br>v.<br><br>Negociado de la Policía de Puerto Rico<br><br>Peticionarios | Certiorari<br><br>2026 TSPR 86<br><br>218 DPR ___ |

Número del Caso: CC-2025-0631


Fecha: 7 de agosto de 2026


Tribunal de Apelaciones:

    Panel Especial


 Oficina del Procurador General:

    Hon. Omar Andino Figueroa
    Procurador General

    Lcdo. Frank A. Rosado Méndez
    Subprocurador General

    Lcda. Carmen A. Riera Cintrón
    Procuradora General Auxiliar


Representante legal de la parte recurrida:

    Lcdo. Fernando Santiago Ortiz


Materia: Derecho Probatorio – Independientemente de que sea presentada en un foro administrativo o judicial, la evidencia demostrativa ilustrativa podrá quedar autenticada mediante el testimonio del testigo que reconoce su contenido, sin la necesidad de establecer su cadena de custodia ni cualquier otro factor de origen.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Agente Roberto L. Gerena Betancourt #5330<br><br>Recurrido<br><br>v.<br><br>Negociado de la Policía de Puerto Rico<br><br>Peticionarios | CC-2025-0631 | |

**El Juez Asociado Señor Candelario López emitió la Opinión del Tribunal.**

En San Juan, Puerto Rico, a 7 de agosto de 2026.

En esta ocasión nos corresponde reafirmar un principio rector del derecho administrativo puertorriqueño, a fin de que las Reglas de Evidencia, en toda su rigurosidad procesal, no gobiernan los procedimientos adjudicativos ante una agencia administrativa. En concreto, tenemos la oportunidad de intervenir ante una *Resolución* emitida por la Comisión de Investigación, Procesamiento y Apelación (CIPA) por su estricta aplicación de las Reglas de Evidencia y su errada interpretación de los requisitos de autenticación.

Aprovechamos esta ocasión para reafirmar que, independientemente de que sea presentada en un foro administrativo o judicial, la evidencia demostrativa ilustrativa podrá quedar autenticada mediante el testimonio del testigo que reconoce su contenido, sin la necesidad de establecer su cadena de custodia ni cualquier otro factor de origen.

Por considerar que el foro apelativo intermedio erró al confirmar el dictamen de la CIPA, adelantamos que procede revocar la *Sentencia* recurrida y ordenamos la celebración de una vista administrativa conforme a los fundamentos esbozados a continuación. Así, veamos los hechos que originaron el asunto ante nuestra consideración.

## I

Los hechos de este recurso surgen a raíz de una suspensión de empleo y sueldo en contra del Agte. Roberto L. Gerena Betancourt (agente Gerena Betancourt o recurrido). A saber, el 26 de noviembre de 2018, el entonces Comisionado del Negociado de la Policía de Puerto Rico (Negociado, NPPR o parte peticionaria) suscribió al recurrido una *Notificación de Suspensión Sumaria de Empleo y Sueldo y Resolución de Cargos* por presuntamente haber cometido actos de violencia doméstica contra su pareja.[1] Debido a que el foro primario encontró causa para arresto en su contra y le impuso una fianza, se le ocupó su arma de reglamento y el Comisionado del NPPR lo suspendió de empleo y sueldo, efectivo a la fecha

---

[1] En específico, el Comisionado del Negociado indicó lo siguiente:

> Surge de la Denuncia radicada el 8 de noviembre de 2018 en el Tribunal de Primera Instancia, Sala de Humacao que usted, allá para el año 2016 en el pueblo de Humacao, ilegal, voluntaria y criminalmente **empleó maltrato psicológico y físico contra la Sra. Aracelis Santana Ramos,** con quien mantuvo una relación de pareja por seis años y quien también es Agente del Orden Público, para causarle grave daño emocional y físico. Dicho maltrato consistió en que usted agredió a la perjudicada con las manos en el rostro rompiéndole la boca, el labio superior específicamente, causándole una herida abierta. Esta no fue la primera vez en que usted ha incurrido en dicho maltrato hacia la Sra. Santana. En otros incidentes en los años 2014, 2015 y 2016 usted ha agredido a ésta en diferentes partes del cuerpo.

(Negrillas suplidas).

de notificación.[2] Además, lo citó a una vista administrativa informal y le impartió las advertencias pertinentes.

El 21 de mayo de 2021, ya celebrada la vista, el Comisionado del Negociado emitió una *Resolución Final de Expulsión*.[3] Mediante esta, indicó que tras reevaluar el expediente y el informe del Oficial Examinador, le impondría al recurrido la medida disciplinaria anunciada. En consecuencia, lo expulsó del puesto ocupado en el Negociado.

Inconforme, el 24 de junio de 2021, el agente Gerena Betancourt presentó una *Apelación* ante la CIPA. En extrema síntesis, argumentó que la sanción impuesta era improcedente por no estar basada en prueba clara, robusta y convincente que obrara en el récord administrativo, y además, por este contar con prueba de carácter exculpatorio.

El 4 de febrero de 2022, la CIPA citó a las partes a una vista administrativa formal que fue celebrada el 2 de mayo de 2023. En esta, el Negociado presentó evidencia testifical y documental que consistió en los testimonios del Sgto. David Rodríguez Villafañe, Supervisor de la División

---

[2] La notificación del Comisionado del NPPR lee de la siguiente manera:

> El Honorable Juez Glen Velázquez Morales encontró causa para arresto en su contra en la vista de Regla 6 en alzada, por el Artículo 3.1 de la ley 54-1989, delito grave, y se ordenó su arresto. Se le impuso una fianza de $30,000.00. A usted le fue ocupada su arma de reglamento.

> Conforme al referido artículo 2.20 de la Ley 20-2017, el Comisionado tiene autoridad para suspender sumariamente [de] empleo y sueldo a cualquier miembro del Negociado de la Policía de Puerto Rico cuando se haya encontrado causa para arresto o acusación por cometer un delito grave.

[3] Surge del expediente que esta *Resolución* fue notificada al agente Gerena Betancourt el 28 de mayo de 2021.

de Patrullas y Carreteras de Humacao, y la Agte. Concepción Figueroa Soto, Agente de la División de Violencia Doméstica del mismo municipio. No obstante, debido a que en esta vista no estuvieron presentes dos testigos del Negociado, la CIPA señaló una continuación para el 25 de mayo de 2023. A esta segunda vista compareció la Agte. Aracelis Santana Ramos (agente Santana Ramos), pareja consensual del recurrido y alegada víctima, pero no estuvo disponible para testificar el Agte. Fernando Morales Canales (agente Morales Canales). Este último envió un certificado médico al Negociado para justificar su incomparecencia, que luego fue presentado en la vista.[4]

Así, el 17 de enero de 2024, la CIPA notificó una *Resolución* mediante la cual revocó la medida disciplinaria impuesta por el Negociado. Sostuvo que el NPPR no presentó la prueba clara, robusta y convincente requerida para justificar la expulsión del recurrido, ya que, basado en la totalidad de la prueba, no se configuró la comisión de ninguna de las faltas imputadas. Ante ello, ordenó la reinstalación del agente Gerena Betancourt, la remoción de la destitución de su expediente personal y el pago de todos los salarios y beneficios marginales dejados de percibir desde que fue destituido de su puesto.

---

[4] Según obra en el récord administrativo, el agente Morales Canales envió un correo electrónico, fechado el jueves 25 de mayo de 2023 a las 8:52am, mediante el cual adjuntó el referido certificado médico, justificando su ausencia por razones de enfermedad hasta el próximo lunes 29 de mayo de 2023. Este documento fue admitido en evidencia y marcado como *Exhibit B*.

Aún en desacuerdo, el 20 de marzo de 2024, la parte peticionaria presentó un *Recurso de Revisión Administrativa* ante el Tribunal de Apelaciones (TA). En su petitorio, sostuvo que la CIPA erró en su apreciación de la prueba y al aplicar rigurosamente las Reglas de Evidencia. En cuanto a este segundo señalamiento de error, arguyó que la CIPA se equivocó al no permitirle someter en evidencia veintidós fotografías que ilustraban los golpes de la alegada víctima, limitando así su derecho a presentar prueba para sostener los cargos imputados. Razonó que la CIPA incidió al determinar que las fotos eran inadmisibles porque no podían ser autenticadas, y al no permitir que la presunta víctima las autenticara.[5] A su vez, indicó que la CIPA abusó de su discreción al rehusarse a señalar una continuación de vista para que el agente Morales Canales pudiera comparecer para autenticar las fotografías, a pesar de que este se había excusado por razones médicas.[6]

---

[5] Véase *Transcripción Oficial de Vista Administrativa* de 25 de mayo de 2023, en las págs. 30-32. En lo pertinente a la admisión de las fotografías en cuestión, el Comisionado – Presidente realizó las siguientes expresiones:

> [Y]a yo escuché la versión del compañero […] y obviamente no vamos [a] admitir las fotos, **obviamente la cadena de evidencia está prácticamente imposible** […] lo único que tenemos es […] la versión de ella […] podrá tener pertinencia, podrá tener lo que sea, pero obviamente **la autenticación no la vamos a hacer** […].
> […]
> **[E]l tiempo, la hora, el sitio, el mecanismo cómo se las tomó, todo ese tipo de evidencia obviamente no la tenemos aquí.**
> […]
> [A]quí me la tienen que traer y traerme la prueba, autenticármela y todo el procedimiento […].
> (Negrillas suplidas).

[6] Ante la inadmisibilidad de las fotografías por cuestiones de autenticación, el abogado del Negociado solicitó la continuación de la vista "puesto que el [t]estigo que iba a declarar también en cuanto a

Así las cosas, el 24 de julio de 2025 el TA notificó una *Sentencia* mediante la cual confirmó el dictamen de la CIPA. En lo pertinente al primer señalamiento de error, sostuvo que la apreciación de la prueba realizada por el foro recurrido merecía deferencia. Al analizar el segundo señalamiento, el TA esbozó que la CIPA incidió al aplicar rigurosamente las Reglas de Evidencia y al no admitir las referidas fotografías "razonando que no se podía establecer su *cadena de evidencia*, al solo contar con la versión de la perjudicada". Además, el foro apelativo intermedio señaló que, aun aplicando rigurosamente las reglas probatorias, estas fotografías debieron ser admitidas y esbozó lo siguiente:

> Manifestamos que la CIPA se equivocó en varios frentes porque, aunque se hubiesen aplicado rigurosamente las Reglas de Evidencia, tales fotos también habrían de ser admitidas, pues no precisaban el establecimiento de una *cadena de evidencia* al tratarse de evidencia demostrativa ilustrativa, **utilizadas con el propósito de corroborar el testimonio de la perjudicada**, (de aquí que se considere demostrativa *ilustrativa*, no *real*). Tal como lo sugirió el NPPR, para la autenticación de tales fotos bastaba con el testimonio de la Agte. Santana Ramos.
>
> [...]
>
> En definitiva, de aplicar las Reglas de Evidencia a la vista administrativa realizada, (y en este caso, reiteramos, no se tenía que hacer), **bastaba con el testimonio de la propia perjudicada para autenticar las fotos que el NPPR se dispuso a presentar como evidencia, sin necesidad de establecerse la cadena de evidencia**, autenticación [...] que se aplica a la prueba demostrativa real.
>
> (Negrillas suplidas).

---

las fotografías" se había excusado por razones médicas. Sin embargo, el Comisionado Presidente indicó que no aceptaría las fotos ni tampoco señalaría un día adicional para ver esta vista. Íd., en las págs. 33-34.

No obstante, a pesar de justipreciar que el segundo señalamiento de error fue cometido, el TA resolvió que la admisión de las fotografías no hubiese tenido un efecto sustancial o decisivo en la *Resolución* y, por lo tanto, la confirmó.[7]

Todavía inconforme y tras un intento fallido de reconsideración, el 12 de septiembre de 2025, el Negociado presentó el recurso de epígrafe y esbozó el siguiente señalamiento de error:

> ERRÓ EL TRIBUNAL DE APELACIONES AL CONCLUIR QUE LA PRUEBA PRESENTADA POR LA POLICÍA FUE INSUFICIENTE PARA ESTABLECER QUE EL EX AGTE. GERENA BETANCOURT INCURRIÓ EN CONDUCTA CONSTITUTIVA DE VIOLENCIA DOMÉSTICA EN VIRTUD DE QUE LA ADMISIÓN [DE LAS] FOTOGRAFÍAS PREVIAMENTE EXCLUIDAS POR LA CIPA, NO HABRÍA TENIDO UN EFECTO SUSTANCIAL O DECISIVO EN LA DETERMINACIÓN A LA QUE ARRIBÓ EL FORO ADMINISTRATIVO.

Examinado el recurso, el 5 de diciembre de 2025 expedimos el auto solicitado. Ante este cuadro fáctico y habiendo evaluado los alegatos de las partes, procedemos a resolver.

II

### A. Revisión Judicial

Sabido es que, en nuestra jurisdicción, las determinaciones emitidas por un organismo administrativo están sujetas al proceso de revisión judicial esbozado en la

---

[7] En su *Sentencia*, el foro apelativo intermedio sostuvo que "[l]as referidas fotografías tuvieron el propósito de corroborar un testimonio que, a fin de cuentas, no fue creído por el juzgador de los hechos, apreciación de la prueba en la que no estamos en posición de intervenir".

Sección 4.2 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9672 (LPAU). Véase, además, 3 LPRA sec. 9675. Conforme a ello, la LPAU autoriza expresamente la revisión de toda decisión, orden y resolución final que realice una agencia. 3 LPRA sec. 9676. Esto es así, puesto que el propósito de la revisión judicial es asegurar que los entes administrativos actúen conforme a las facultades concedidas por ley y dentro del marco del poder delegado por la asamblea legislativa. *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 113-114 (2023) citando a D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Bogotá, Ed. Forum, 2013, pág. 669; *OEG v. Martínez Giraud*, 210 DPR 79, 88-89 (2022).

Por razón de la experiencia y el conocimiento especializado que las agencias administrativas poseen sobre los asuntos que se les han delegado, los foros revisores estamos llamados a conceder deferencia a las decisiones de estas, debido a que ostentan una presunción de legalidad y corrección que subsiste mientras no se produzca prueba suficiente para derrotarla. *Hernández Feliciano v. Mun. Quebradillas*, *supra*, pág. 114; *OEG v. Martínez Giraud*, *supra*, págs. 88-89. Sin embargo, en reiteradas ocasiones hemos expresado que la deferencia conferida a las determinaciones de un organismo administrativo cederá cuando: (1) el ente administrativo haya errado en su aplicación o interpretación

de las leyes o reglamentos ante su consideración; (2) las determinaciones tomadas no estén basadas en evidencia sustancial que obre en el expediente administrativo; (3) la agencia haya actuado de manera arbitraria, irrazonable o ilegal; o (4) cuando los actos del foro administrativo lesionen derechos constitucionales fundamentales. Íd.

Así pues, el criterio rector al momento de pasar juicio sobre la decisión de un ente administrativo es la razonabilidad de la actuación de la agencia. *Hernández Feliciano v. Mun. Quebradillas*, *supra*, pág. 115; *OEG v. Martínez Giraud*, *supra*, pág. 89. De esta manera, la revisión judicial está limitada a evaluar si el foro administrativo abusó de su discreción. Íd. A saber, el alcance del proceso de revisión consiste en determinar: 1) si el remedio concedido fue el apropiado; 2) si las conclusiones de derecho fueron las correctas; y 3) si las determinaciones de hecho están basadas en evidencia sustancial que obra en el expediente administrativo. 3 LPRA sec. 9675.

En lo pertinente a la evidencia sustancial, la hemos definido como toda prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *OEG v. Díaz Atienza*, 2025 TSPR 128, pág. 13, 216 DPR ____ (2025) citando a *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018); *OEG v. Martínez Giraud*, *supra*, pág. 90. A su vez, la necesidad de que esta obre en el expediente obedece a que el expediente administrativo constituye la base exclusiva, tanto para la decisión de la agencia en el

procedimiento adjudicativo como para cualquier revisión judicial posterior. *OEG v. Díaz Atienza*, *supra*, pág. 13.

Sin embargo, cónsono con la Sección 4.5 de la LPAU, hemos expresado en numerosas ocasiones que las conclusiones de derecho serán revisables en todos sus aspectos por los tribunales revisores. *OEG v. Díaz Atienza*, *supra*; *OEG v. Martínez Giraud*, *supra*, pág. 90. Tan reciente como en *Vázquez et al. v. DACo*, 2025 TSPR 56, 215 DPR ___ (2025), concluimos que la deferencia que merecen las conclusiones e interpretaciones de las agencias administrativas no equivale a una renuncia a nuestra función revisora. Al contrario, en esa ocasión reiteramos que, al enfrentarse a un recurso de revisión judicial, es el deber de los foros apelativos revisar las conclusiones de derecho en todos sus aspectos, poniendo en práctica los mecanismos interpretativos propios del Poder Judicial. Íd.

### B. Ley de la Comisión de Investigación, Procesamiento y Apelación

La CIPA es una entidad creada en virtud de la *Ley de la Comisión de Investigación, Procesamiento y Apelación (CIPA)*, Ley 32-1972, según enmendada, 1 LPRA sec. 171 *et seq.* (Ley de la CIPA), con el propósito de establecer un organismo con poderes cuasijudiciales para intervenir en aquellos casos en que se impute mal uso o abuso de autoridad a cualquier funcionario del orden público estatal o municipal, agente de rentas internas o cualquier otro funcionario de la Rama Ejecutiva autorizado para efectuar arrestos. *Torres Rivera*

*v. Policía de PR*, 196 DPR 606, 620-621 (2016); *González y otros v. Adm. de Corrección*, 175 DPR 598, 607 (2009). De este modo, la CIPA puede ejercer sus funciones en primera instancia o en apelación. 1 LPRA sec. 172.

En lo pertinente a la controversia ante nos, el Art. 2(2) de la Ley de la CIPA, *supra*, dispone que este organismo:

> [a]ctuará como cuerpo apelativo con jurisdicción exclusiva para oír y resolver apelaciones interpuestas por los funcionarios públicos cubiertos por esta Ley, <u>cuando el jefe o director del organismo o dependencia de que se trata les haya impuesto cualquier medida disciplinaria en relación con actuaciones cubiertas por esta Ley</u>, o con faltas leves en que se haya impuesto una reprimenda o suspensión de empleo y sueldo **o faltas graves en el caso de miembros de la Policía Estatal o Municipal** o de otras agencias que tenga reglamentación similar.
>
> […]
>
> La Comisión, luego de celebrar la vista correspondiente, según lo dispuesto en el Artículo 3, Inciso (3), podrá confirmar, revocar o modificar la determinación o actuación de la cual se hubiere apelado, o podrá imponer cualquier sanción que la autoridad facultada para sancionar hubiese podido imponer.
>
> […]
>
> (Negrillas y subrayado suplidos).
>
> Íd.

Al amparo de las facultades que le fueron delegadas por la Asamblea Legislativa, la CIPA adoptó el *Reglamento para la presentación, investigación y adjudicación de querellas y apelaciones ante la Comisión de Investigación, Procesamiento y Apelación*, Reglamento Núm. 7952 del Departamento de Estado, 1 de diciembre de 2010 (Reglamento de la CIPA). De esta manera, el Art. 15(1)(a) del referido reglamento también dispone que la CIPA actuará como el cuerpo apelativo

encargado "[p]ara oír y resolver apelaciones interpuestas por los funcionarios públicos cubiertos por la Ley, cuando el Jefe o Director del organismo o dependencia de que se trate haya impuesto cualquier medida disciplinaria en relación con actuaciones cubiertas por la Ley".

Por su parte, el Art. 4(w) del Reglamento de la CIPA, *supra*, define "apelación" como el escrito mediante el cual una parte impugna la decisión emitida por la autoridad nominadora y solicita que la CIPA celebre una vista. Según el Art. 10(5) de este reglamento, una vez se presente la apelación junto con los documentos requeridos, la CIPA señalará fecha para la vista y lo notificará a las partes.

Así, en cuanto a la celebración de esta vista, hemos reconocido que es una especie de juicio *de novo* en el cual la CIPA —como organismo administrativo— tiene la oportunidad de escuchar toda la prueba nuevamente y otorgarle el valor probatorio que a su juicio merezca. *Torres Rivera v. Policía de PR*, *supra*, pág. 623; *Ramírez v. Policía de P.R.*, 158 DPR 320, 332 (2002); *Arocho v. Policía de P.R.*, 144 DPR 765, 772 (1998). Esta vista es una propiamente formal porque en ella se ventilan de manera definitiva todos los derechos del empleado a nivel administrativo, y en ese sentido, es equivalente a un juicio en sus méritos. *Ramírez v. Policía de P.R.*, *supra*, pág. 334. Asimismo, la CIPA puede realizar sus propias determinaciones de hecho o conclusiones de derecho. *Torres Rivera v. Policía de PR*, *supra*, pág. 623; *Arocho v. Policía de P.R.*, *supra*, pág. 772.

**C.** **Aplicación de las Reglas de Evidencia en los procedimientos administrativos**

Ante la celebración de una vista adjudicativa en el ámbito administrativo, es sabido que la Sec. 3.13 de la LPAU rige el procedimiento a seguir. 3 LPRA sec. 9653. Así, una función esencial que posee el funcionario encargado de presidir estas vistas es la facultad de recibir evidencia por las partes y excluir aquella que entienda impertinente, inmaterial, repetitiva o inadmisible. Íd., sec. 9653(c). La CIPA no es ajena a este andamiaje, ya que su ley habilitadora reconoce expresamente las facultades que tiene para recibir prueba por las partes que litigan un pleito ante sí. 1 LPRA sec. 172.

A tenor de lo esbozado, es norma altamente reconocida que las reglas de evidencia no aplican a los procedimientos administrativos en nuestra jurisdicción. *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1004-1005 (2011); *Otero v. Toyota*, 163 DPR 716, 733 (2005); *O.E.G. v. Rodríguez*, 159 DPR 98, 112 (2003); véase, además, Sec. 3.13(e) de la LPAU, *supra*. Lo mismo dispone la Ley de la CIPA, *supra*, a efectos de que "[l]as reglas de evidencia que prevalecen en los tribunales de justicia no serán obligatorias en ningún procedimiento efectuado ante la Comisión". 1 LPRA sec. 173. La razón para ello es que el propósito fundamental de los procesos administrativos es la búsqueda de la verdad y la justicia, persiguiendo que lo justo impere sin las trabas procesales de los tribunales judiciales. *Otero v. Toyota*,

*supra*, pág. 733; *O.E.G. v. Rodríguez*, supra, págs. 112-113. Por consiguiente, al no exigir la aplicación de estas reglas, nuestro andamiaje administrativo propicia que los procesos adjudicativos sean de carácter ágil y sencillo, y a su vez permite que el juzgador conozca toda la información pertinente para dilucidar la controversia ante sí. *Torres Santiago v. Depto. Justicia*, *supra*, págs. 1004-1005.

Sin embargo, también hemos expresado que las reglas de evidencia persiguen viabilizar la búsqueda de la verdad, no obstaculizarla. *Torres Santiago v. Depto. Justicia*, *supra*, pág. 1005; *Otero v. Toyota*, *supra*, pág. 733 citando a *J.R.T. v. Aut. de Comunicaciones*, 110 DPR 879, 884 (1981). Por consiguiente, hemos reconocido que la adopción de los principios y las normas fundamentales de estas reglas es permitida siempre que sean compatibles con el procedimiento administrativo y sirvan para lograr una solución rápida, justa y económica de la controversia. *O.E.G. v. Rodríguez*, *supra*, pág. 112; véase, además, Sec. 3.13(e) de la LPAU, *supra*.

De esta manera, hemos expresado que la norma relativa a la interpretación flexible de las reglas de evidencia es mucho más liberal en la aplicación del derecho probatorio a aquellos procedimientos de carácter administrativo. *O.E.G. v. Rodríguez*, *supra*, pág. 113; *J.R.T. v. Aut. de Comunicaciones*, *supra*, pág. 884. Es decir, en los procesos cuasijudiciales de la esfera administrativa debe prevalecer la flexibilidad y el carácter informal para que toda

información pertinente a la controversia pueda llegar al conocimiento del juzgador de hechos. Íd. En otras palabras, puesto que las reglas o principios de evidencia no aplican en el ámbito administrativo, en aquellas ocasiones en que sí se utilicen, estas deben ser interpretadas con mayor liberalidad que en el escenario de un trámite judicial. *O.E.G. v. Rodríguez*, *supra*, pág. 113.

### D. Evidencia demostrativa y su autenticación

A través de los años, hemos sostenido el inmenso valor probatorio de las fotografías para fines de ilustrar hechos esenciales sobre lo declarado por los testigos, demostrar lesiones sufridas, describir características físicas de lugares o corroborar localizaciones geográficas. *Pueblo v. Rivera Nazario*, 141 DPR 865, 894 (1996) citando a *In re Colton Fontán*, 128 DPR 1, 95-96 (1991). Esto es así, pues una fotografía es una pieza de evidencia demostrativa que constituye "una reproducción fiel y exacta de la persona, sitio o cosa". *In re Colton Fontán*, *supra*, pág. 95 citando a *Pueblo v. Márquez*, 67 DPR 326, 335 (1947). Así, el valor intrínseco de la fotografía radica en su capacidad de perpetuar múltiples detalles objetivamente, pues por su naturaleza tangible, describe mejor que las palabras y no descansa en una "memoria pobre o falible". *In re Colton Fontán, supra*, pág. 95. De esta manera, las fotografías perpetúan hechos con una certeza, eficiencia y confiabilidad que excede la capacidad normal humana. *Pueblo v. Luzón*, 113 DPR 315, 326 (1982).

En lo pertinente a la evidencia demostrativa, esta es aquella prueba perceptible por los sentidos, de naturaleza tangible, visible o audible que transmite al juzgador de hechos una impresión de primera mano. E. L. Chiesa Aponte, *Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y Federales*, República Dominicana, Ed. Corripio, 1998, T. II, págs. 1049-1056. A saber, este tipo de evidencia puede ser clasificada en "evidencia real" o "evidencia ilustrativa". Íd., págs. 1051-1052; E. L. Chiesa Aponte, *Reglas de Evidencia de Puerto Rico 2009*, Estados Unidos de América, Publicaciones JTS, Ed. Luiggi Abraham, 2009, pág. 324. Por un lado, la evidencia real es "la cosa misma relacionada con los hechos del caso", mientras que la evidencia ilustrativa es una mera representación de la cosa que ayuda al juzgador a entender otra evidencia. E. L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, Puerto Rico, Ed. SITUM, 2016, pág. 393.

En concreto, la evidencia ilustrativa es aquella que es "únicamente para enseñar, instruir, representar o hacer más comprensible" el testimonio de un testigo, ya que representa adecuadamente lo que se va a declarar o sobre lo que se está declarando. Íd., págs. 393-394; *Pueblo v. Nazario Hernández*, 138 DPR 760, 774 (1995). El Prof. Chiesa Aponte nos explica sobre esta que:

> En el caso de la evidencia ilustrativa, cuyo fin es ilustrar o clarificar un testimonio, como por ejemplo un *croquis*, un *chart*, una fotografía, **lo único que el proponente debe establecer es que tal evidencia es de ayuda al juzgador para entender otra evidencia, particularmente el testimonio de**

**un testigo. En estos casos el origen de la evidencia ilustrativa tiene poca o ninguna importancia.** Lo mismo da que un testigo vaya a la pizarra y el mismo haga un dibujo que ilustre su testimonio o utilice un modelo, *croquis*, etc. *preparado por él u otra persona*. **Lo único importante es que el tribunal entienda que la evidencia ilustrativa hace más comprensible la otra evidencia.**

(Negrillas suplidas).

E. L. Chiesa Aponte, *Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1983, Vol. I, pág. 514.

Así, para efectos de la autenticación de la evidencia demostrativa, el procedimiento a seguir depende de si la evidencia es real o ilustrativa. En cuanto a la primera, hemos reconocido que "[h]ay mucho mayor rigor en la evidencia real, pues hay que satisfacer [el requisito de] mismidad [establecido] en la Regla 901(A)".[8] Chiesa Aponte, *Reglas de Evidencia Comentadas*, *op. cit.*, pág. 394. Esto así pues "[c]uando se trata de evidencia real, la autenticación es crítica, ya que generalmente es indispensable para establecer los hechos en controversia", y más aún, "[e]s necesario establecer que dicha evidencia es justamente lo que el

---

[8] A modo de ejemplo, el Prof. Chiesa Aponte nos describe una situación en la cual la fotografía es utilizada como evidencia real, y requiere un mayor rigor en su autenticación que cuando es presentada como evidencia ilustrativa:

En otras ocasiones, la fotografía es evidencia real, como cuando es la fotografía de la pornografía infantil cuya posesión se imputa al acusado.
[…]
Así, si se trata de la fotografía obscena ocupada al acusado, habrá que establecer que la fotografía presentada en evidencia es la misma que se le ocupó al acusado. Pero esto no ocurre con la fotografía usada meramente como evidencia ilustrativa.

Chiesa Aponte, *Reglas de Evidencia Comentadas*, *op. cit.*, pág. 394.

proponente sostiene." R. Emmanuelli Jiménez*, Prontuario de Derecho Probatorio Puertorriqueño*, Ed. SITUM, 2015, pág. 611.

Por otro lado, **cuando se trata de evidencia demostrativa ilustrativa, no se requiere más autenticación que el testimonio del testigo en términos de que la fotografía representa adecuadamente la escena a la que se refiere en su declaración.**[9] Chiesa Aponte, *Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y Federales*, *op. cit.*, pág. 1055. Es decir, el único requisito para autenticarla es que "servirá de ayuda, explicación o ilustración al juzgador de hechos al evaluar la prueba o los testimonios." Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño, op.cit.*, pág. 611. A tales efectos, en la esfera federal se ha reconocido que las condiciones o los mecanismos en que fue tomada la fotografía son impertinentes, a saber:

> El principio sobre el cual las fotografías son más comúnmente admitidas como prueba es el mismo que subyace a la admisión de dibujos ilustrativos, mapas y diagramas. Según esta teoría, **una fotografía se considera simplemente como una representación gráfica del testimonio oral, y se vuelve admisible únicamente cuando un testigo ha declarado que es una representación correcta y precisa de hechos relevantes observados personalmente por este.** En consecuencia, según esta teoría, **el testigo que establece la base no necesita ser el fotógrafo ni saber nada sobre el momento, las condiciones o los mecanismos de la**

---

[9] El Prof. Julio Fontanet nos explica que la evidencia demostrativa ilustrativa tiene cuatro bases evidenciarias fundamentales: (1) el testigo conoce el objeto o la escena; (2) el testigo explica las bases de su conocimiento; (3) el testigo reconoce el objeto o la escena reflejada en la evidencia demostrativa; y (4) el testigo acredita que el objeto o la escena reflejada en la evidencia demostrativa se compara de manera fiel y exacta con la conocida. Por consiguiente, como cuestión de derecho, la persona que tomó la fotografía no tiene que declarar para que la misma sea admisible. J. E. Fontanet Maldonado, *Principios y Técnicas de la Práctica Forense*, 3.ª ed., Puerto Rico, Ed. Jurídica Editores, 2010, págs. 123-126.

**toma. En cambio, solo necesita conocer los hechos representados o la escena o los objetos fotografiados, y una vez que se demuestra este conocimiento, puede decir si la fotografía representa correcta y precisamente estos hechos.** Una vez que la fotografía ha sido así verificada, es admisible como una representación gráfica del testimonio del testigo que la verifica, al cual se incorpora por referencia.

(Traducción y negrillas suplidas).

*McCormick on Evidence*, 4.ª ed., Estados Unidos de América, Ed. West Publishing Co., 1992, Vol. 2, págs. 394.

En otras palabras, la fuente de esta o cómo fue tomada es insignificante, puesto que su admisibilidad se justifica por el mero hecho de que la fotografía sea una representación fidedigna del testimonio admitido de otro modo en evidencia. *McCormick on Evidence*, 9.ª ed., Estados Unidos de América, Ed. Thomson Reuters, 2025, Vol. 2, págs. 22-23. (Traducción suplida).

## III

En el recurso ante nuestra consideración, nos corresponde justipreciar si la CIPA actuó irrazonablemente al denegar la admisibilidad de veintidós fotografías de las presuntas lesiones causadas por el recurrido, que fueron ofrecidas por el NPPR en la vista administrativa celebrada el 25 de mayo de 2023. En específico, la parte peticionaria sostiene que la CIPA erró al aplicar rigurosamente las Reglas de Evidencia y determinar que las fotos aludidas eran inadmisibles puesto que, según el foro administrativo, estas no pudieron ser autenticadas por requerir una cadena de custodia. Además, el Negociado impugna el dictamen del TA,

ya que a pesar de que determinó que la CIPA erró en su aplicación de las Reglas de Evidencia, aun así confirmó al foro administrativo razonando que la admisión de las fotos no hubiese tenido un efecto sustancial o decisivo en el resultado. Evaluado el récord administrativo en su totalidad, es forzoso concluir que el Negociado tiene la razón.

En primer lugar, **estamos de acuerdo con los planteamientos del NPPR y del TA, a los efectos de que la CIPA se extralimitó en su aplicación de las Reglas de Evidencia.** De entrada, tanto la LPAU como la Ley de la CIPA, *supra*, disponen expresamente que las reglas de evidencia que prevalecen en nuestros tribunales no son de aplicación compulsoria en la esfera administrativa. Así lo hemos expresado una y otra vez a través de nuestra jurisprudencia, pues este principio no constituye una mera concesión de flexibilidad procesal, sino que refleja una política pública deliberada: que lo justo impere en los foros administrativos sin las trabas procesales propias de los tribunales de justicia. *Otero v. Toyota*, *supra*, pág. 733; *O.E.G. v. Rodríguez*, supra, pág. 112. Esto significa que, en aras de propiciar la agilidad y sencillez de los procesos, al igual que fomentar que el juzgador conozca toda la información pertinente para adjudicar la controversia ante su consideración, la aplicación de estas reglas no es obligatoria.

Así, obra en el expediente ante nos que, durante el testimonio de la agente Santana Ramos, el Negociado solicitó

la admisión de un bloque de veintidós fotografías para que la testigo declarara sobre ellas. A tales efectos, la agente Santana Ramos testificó haberse tomado las fotos cuando ocurrieron los presuntos incidentes de violencia doméstica, entre los años 2014 y 2016, y además, que estas reflejaban los golpes que había recibido por el recurrido. El NPPR también sostuvo que estas fotografías eran las mismas que obraban en el expediente administrativo de la querella en contra del agente Gerena Betancourt y que formaron parte de la evidencia tomada en consideración para imponer la medida disciplinaria en cuestión.[10]

De su faz, es evidente que, en un caso en donde se imputa violencia doméstica a un potencial agresor, las imágenes de los golpes recibidos por la presunta víctima son pertinentes a la controversia, y más aún cuando fueron parte del expediente que sirvió de base para imponer la sanción disciplinaria impugnada. Esto así, pues las fotografías tienen un inmenso valor probatorio para representar los hechos declarados con certeza, eficiencia y confiabilidad. *Pueblo v. Rivera Nazario*, *supra*, pág. 894; *In re Colton Fontán*, *supra*, pág. 95; *Pueblo v. Luzón*, *supra*, pág. 326. Aun así, el adjudicador de la CIPA fue categórico al rehusarse a admitir las fotos por razón de que no se podía establecer la cadena de evidencia y, por tanto, no era posible autenticarlas.[11] A su vez, ante planteamientos por el

---

[10] Véase *Transcripción Oficial de Vista Administrativa* de 25 de mayo de 2023, págs. 27-30.
[11] Íd., pág. 30.

Negociado sobre la inaplicabilidad de las reglas de evidencia en la vista administrativa, la CIPA sostuvo que estas sí aplicaban en caso de que aceleraran los procedimientos.[12]

De este modo, la CIPA optó por aplicar las Reglas de Evidencia de una manera que, en lugar de viabilizar la búsqueda de la verdad, la obstaculizó. Teniendo ante su consideración unas fotografías que aparentaban ser pertinentes al testimonio de la agente Santana Ramos, en tanto pudieron haberle otorgado credibilidad a la declaración sobre la presunta agresión del recurrido, la CIPA optó por levantar trabas procesales disfrazadas de requisitos probatorios. En el pasado hemos reconocido la adopción de los principios y las normas fundamentales de las Reglas de Evidencia, siempre que sean compatibles con el procedimiento administrativo y sirvan para lograr una solución rápida, justa y económica del caso. *O.E.G. v. Rodríguez*, *supra*, pág. 112. Sin embargo, hemos sido enfáticos en que su interpretación debe ser flexible y mucho más liberal que en los procesos judiciales, para que toda la información pertinente pueda llegar al conocimiento del juzgador. Íd., pág. 113 citando a *J.R.T. v. Aut. de Comunicaciones*, *supra*, pág. 884. Con este proceder, **justipreciamos que la CIPA abusó de su discreción al aplicar rigurosamente las Reglas de Evidencia, ya que, además de actuar en contravención de los principios jurisprenciales y estatutarios que han regido**

---

[12] En específico, surge de la transcripción que el Comisionado-Presidente de la CIPA expresó que las reglas de evidencia "aplican […] en el caso de que aceleren los procedimientos y nos ilustren a nosotros […] con una prueba… que es una prueba fundamental." Íd., págs. 32-33.

**nuestro ordenamiento jurídico durante décadas, excluyó evidencia pertinente a la adjudicación del caso ante sí.**

También somos del criterio de que el foro apelativo intermedio realizó un análisis correcto en derecho al expresar que, aun aplicadas rigurosamente las Reglas de Evidencia, las fotografías en cuestión debieron haber sido admitidas por la CIPA. A saber, el TA indicó que:

> [L]a CIPA se equivocó en varios frentes porque, **aunque se hubiesen aplicado rigurosamente las Reglas de Evidencia, tales fotos también habrían de ser admitidas, pues no precisaban el establecimiento de una *cadena de evidencia* al tratarse de evidencia demostrativa ilustrativa, utilizadas con el propósito de corroborar el testimonio de la perjudicada,** (de aquí que se considere demostrativa *ilustrativa*, no *real*). Tal como lo sugirió el NPPR, **para la autenticación de tales fotos bastaba con el testimonio de la Agte. Santana Ramos.**

(Negrillas suplidas).

Surge del expediente que durante el testimonio de la agente Santana Ramos, el recurrido objetó la utilización de las veintidós fotografías porque ninguna establecía la admisión de fecha, hora, lugar o el momento en que fueron tomadas.[13] En específico, sostuvo que la cadena de evidencia de estas fotos era dudosa y que el Negociado no había traído a ningún funcionario para autenticar la forma y manera en que habían sido obtenidas.[14] Así, a pesar de que el Negociado argumentó que la persona que tomó las fotos acababa de testificar a esos efectos, la CIPA coincidió con el recurrido porque "el tiempo, la hora, el sitio, [y] el mecanismo [de]

---

[13] Íd., pág. 25.
[14] Íd., págs. 25-26.

cómo se las tomó" no fue evidencia presentada en su testimonio.[15]

De este modo, además de su rigurosa aplicación de las reglas de evidencia, la CIPA cometió un segundo error de derecho al exigir que se estableciera una cadena de evidencia para la admisión de las referidas fotos. Cónsono con lo esbozado en esta ponencia, las fotografías constituyen evidencia demostrativa que transmite al juzgador de hechos una impresión de primera mano. En este caso, las fotografías que intentó presentar el Negociado tenían el propósito de representar los golpes que había recibido la agente Santana Ramos de su presunto agresor. Es decir, estas no eran más que evidencia ilustrativa cuyo propósito era ayudar al juzgador a entender el testimonio sobre el maltrato imputado al agente Gerena Betancourt.

Así las cosas, aun aplicando las Reglas de Evidencia, para autenticar efectivamente estas fotos bastaba con que la agente Santana Ramos declarara que las imágenes representaban adecuadamente los golpes mencionados en su testimonio. En concreto, la autenticación de las fotos quedó completada cuando la testigo declaró que sabía que el contenido de estas imágenes representaba los golpes presuntamente recibidos, porque fue ella quien tomó los retratos. De este modo, el error de la CIPA no se limitó al nivel de rigurosidad con el

---

[15] Íd., pág. 31. En respuesta a ello, el Negociado solicitó un día adicional para que el agente Morales Canales pudiese testificar sobre las fotografías en cuestión, ya que se había excusado de la vista por razones médicas. Sin embargo, la CIPA indicó que no estaría celebrando una vista adicional.

cual implementó las Reglas de Evidencia, sino que se extendió a una aplicación errada del derecho. Es decir, **exigir una cadena de evidencia para autenticar la evidencia demostrativa ilustrativa presentada por el Negociado en la vista administrativa del 25 de mayo de 2023 fue un error garrafal por parte de la CIPA.** El momento, las condiciones o los mecanismos de la toma del bloque de fotografías eran completamente irrelevantes, ya que la agente Santana Ramos testificó conocer el contenido de estas y que representaban correctamente los golpes recibidos.

Finalmente, no podemos avalar el dictamen del TA y su confirmación de la *Resolución* recurrida. Mediante este, el foro apelativo intermedio razonó que la admisión de las veintidós fotografías no hubiese tenido un efecto decisivo en la determinación de la CIPA:

> **[A] pesar de que el señalamiento de error sí fue cometido, juzgamos que la admisión de las referidas fotografías no hubiese tenido un efecto sustancial o decisivo en la *Resolución* recurrida.** Según explicamos, al sopesar la totalidad de la prueba testifical presentada por el NPPR, el foro administrativo consignó las incongruencias establecidas entre la teoría legal promovida por esta última parte, y el testimonio vertido por sus propios testigos.
>
> […]
>
> **[N]inguno de los testigos (salvo la propia perjudicada) la observó con rasgos de agresión o golpe alguno;**
>
> […]
>
> **Las referidas fotografías tuvieron el propósito de corroborar un testimonio que, a fin de cuentas, no fue creído por el juzgador de los hechos, apreciación de la prueba en la que no estamos en posición de intervenir.**
>
> (Negrillas y subrayado suplidos).

A tenor de lo esbozado, la liberalidad que caracteriza al ámbito administrativo en la aplicación de principios probatorios persigue la búsqueda de la verdad y la justicia. En esta encomienda de procurar la realidad fáctica del caso, la admisión de evidencia ilustrativa es una herramienta esencial para que el adjudicador tenga mayor comprensión de los testimonios ante sí. *Pueblo v. Nazario Hernández*, *supra*, pág. 774. Sin embargo, el foro apelativo intermedio descartó el potencial ilustrativo que pudo haber tenido la admisión de las fotografías en cuestión, por el mero hecho de que "tuvieron el propósito de corroborar un testimonio que, a fin de cuentas, no fue creído por el juzgador de los hechos".

Este razonamiento adolece de una argumentación circular y contradictoria que ignora los principios rectores del derecho administrativo. Por un lado, el TA confirió entera deferencia a la apreciación de la prueba realizada por la CIPA en ausencia de las fotos, y resaltó que el testimonio de la agente Santana Ramos no fue creído por la agencia. Por otro lado, el foro apelativo intermedio usurpó la función adjudicativa de la CIPA e impuso su propio criterio sobre el efecto que pudiesen tener estas fotos sin tan siquiera tenerlas ante sí.[16] Es decir, el TA especuló sobre el impacto que podrían tener las fotografías en la apreciación de la prueba efectuada por la CIPA sin haberlas examinado. Con este proceder, somos del criterio de que no es posible deferir a

---

[16] Tras una evaluación minuciosa del expediente ante nos, el bloque de veintidós fotografías objeto de controversia no se encuentra en el récord administrativo presentado ante el TA ni ante esta Curia.

la CIPA y simultáneamente sustituir su criterio sobre el efecto de evidencia que nunca evaluó. Esta contradicción interna no se puede sostener.

Al emitir juicio sobre el impacto de una prueba que no obra en el expediente administrativo, el TA se apartó de los principios rectores que rigen la revisión judicial. Así, el foro apelativo intermedio perpetuó el error cometido por la CIPA al obstaculizar la búsqueda de la verdad y la justicia, cerrando la puerta a evidencia ilustrativa que pudo haberle otorgado mayor – o menor – credibilidad al testimonio de la agente Santana Ramos.

Por consiguiente, resolvemos que la CIPA se extralimitó en su aplicación de las Reglas de Evidencia para denegar que se admitieran las fotografías presentadas por el Negociado. En específico, reiteramos que la CIPA se equivocó en dos frentes. Primero, aplicó los principios probatorios de una manera excesivamente rigurosa al proceso administrativo ante sí, y segundo, exigió criterios de autenticación que no eran necesarios para la admisión de evidencia demostrativa ilustrativa, cuyo único fin era ilustrar el testimonio de la agente Santana Ramos. A su vez, revocamos la determinación del TA, pues a pesar de que resolvió que las fotografías debieron haber sido admitidas, emitió juicio sobre el impacto de estas sin tan siquiera haberlas evaluado. Puesto que la apreciación de la prueba es función primaria del foro administrativo, el remedio adecuado es devolver el caso a la CIPA para que ejerza su criterio sobre las fotografías

presentadas por el Negociado en conjunto con la otra prueba presentada, garantizando que la decisión final descanse en un expediente completo, esta vez sin las trabas procesales indebidas que viciaron el procedimiento impugnado.

Así las cosas, **aprovechamos esta ocasión para reafirmar que la aplicación de las Reglas de Evidencia en el ámbito administrativo no es obligatoria, y que, en lo pertinente a la evidencia demostrativa ilustrativa, esta siempre podrá quedar autenticada mediante el testimonio del testigo que reconoce su contenido, sin la necesidad de establecer su cadena de custodia ni cualquier otro factor de origen.**

### IV

Por los fundamentos antes expuestos, se revoca la *Sentencia* emitida por el TA y se devuelve el caso a la CIPA para que celebre una vista administrativa conforme a los pronunciamientos esbozados en esta *Opinión*.

Se dictará Sentencia en conformidad.

Raúl A. Candelario López
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Agente Roberto L. Gerena Betancourt #5330<br><br>Recurrido<br><br>v.<br><br>Negociado de la Policía de Puerto Rico<br><br>Peticionarios | | CC-2025-0631 |

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de agosto de 2026.

Por los fundamentos expuestos en la *Opinión* que antecede, la cual se hace formar parte de la presente Sentencia, se revoca el dictamen emitido por el Tribunal de Apelaciones y se devuelve el caso a la Comisión de Investigación, Procesamiento y Apelación para que celebre una vista administrativa conforme a los pronunciamientos esbozados.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emite una *Opinión de Conformidad* a la cual se le unen el Juez Asociado señor Estrella Martínez, el Juez Asociado señor Colón Pérez, la Jueza Asociada Rivera Pérez y el Juez Asociado señor Candelario López.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

Agente Roberto L. Gerena
Betancourt #5330

      Recurrido

       v.                 CC-2025-0631

Negociado de la Policía
de Puerto Rico

      Peticionaria

Opinión de conformidad que emitió la Jueza Presidenta ORONOZ RODRÍGUEZ a la cual se unieron el Juez Asociado señor Estrella Martínez, el Juez Asociado señor Colón Pérez, la Jueza Asociada Rivera Pérez y el Juez Asociado señor Candelario López

En San Juan, Puerto Rico, a 7 de agosto de 2026.

Hoy afirmamos que la Comisión de Investigación, Procesamiento y Apelación (CIPA) y el Tribunal de Apelaciones actuaron de manera irrazonable al revocar la expulsión del Agte. Roberto L. Gerena Betancourt (agente Gerena Betancourt) del cuerpo de la Policía de Puerto Rico. La CIPA, particularmente, se extralimitó en su interpretación de las Reglas de Evidencia y al excluir de su consideración veintidós fotografías que ofreció la Agte. Aracelis Santana Ramos (agente Santana Ramos) para corroborar su testimonio sobre múltiples actos de violencia de género cometidos por su expareja consensual, el agente Gerena Betancourt. La *Opinión* que emite hoy el

Tribunal correctamente apunta a que el error de la CIPA no se limitó al nivel de rigurosidad con el cual implementó las Reglas de Evidencia, cuya aplicación al caso administrativo no es obligatoria, sino que se extendió su error a la aplicación errada del derecho sobre prueba ilustrativa. Por su parte, el Tribunal de Apelaciones, advirtiendo el error de derecho, especuló sobre su efecto en la apreciación de la prueba testimonial de la perjudicada.

Preciso escribir por separado para destacar una consideración adicional que estimo indispensable en la adjudicación de controversias de esta naturaleza. La evaluación de la prueba en casos de violencia de género, particularmente en su modalidad de violencia doméstica, no puede abstraerse de la naturaleza de esta conducta ni del contexto social en el que ocurre. El examen de la evidencia en procesos adjudicativos relacionados con violencia doméstica, por imperativo, debe considerar las dinámicas propias de este mal social para salvaguardar la dignidad de las víctimas durante estos procesos y propender la consecución de la verdad para llegar a conclusiones realmente justicieras. Es esencial evitar que estereotipos, nociones preconcebidas o expectativas infundadas sobre cómo debe comportarse una víctima, o si su testimonio requiere algún tipo de corroboración, incidan, consciente o inconscientemente, en la valoración de la prueba. Ese enfoque contextual no altera las normas probatorias ni releva a quien alega los hechos de demostrarlos; más bien, permite aplicarlas sin reproducir sesgos que obstaculicen la

búsqueda de la verdad y menoscaben la dignidad de las víctimas. Desde esa perspectiva, la prueba ilustrativa puede adquirir un valor probatorio singular para complementar y contextualizar el relato de una persona sobreviviente de violencia doméstica. Corresponde enfatizar su pertinencia para tales fines.

## I.

### A. La violencia doméstica y los foros adjudicativos

"La violencia doméstica es uno de los actos delictivos más complejos que enfrenta nuestra sociedad".[1] Exposición de Motivos de la Ley Núm. 54 de 15 de agosto de 1989, conocida como la *Ley para la Prevención e Intervención con la Violencia Doméstica* (1989 Leyes de Puerto Rico 222) (Ley Núm. 54). La violencia, en el contexto de las relaciones de pareja, "posee características distintivas de otros tipos de violencia". <u>Pueblo v. Pérez Feliciano</u>, 183 DPR 1003, 1008 (2011). Esto, en tanto puede manifestarse en los planos físicos, psicológicos, emocionales y económicos. Véase Artículo 1.3 de la Ley Núm. 54, 8 LPRA sec. 602. Además, por la naturaleza del vínculo íntimo y el entrelazamiento entre víctima y agresor, esta violencia se manifiesta en episodios

---

[1] "La violencia de género […] se considera un problema de derechos humanos, ya que atenta contra el principio que establece que la dignidad del ser humano es inviolable. Artículo II, Sección 1, de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1. […] **La violencia de género —siendo, por ejemplo, la violencia doméstica** y la violencia sexual **manifestaciones de esta**, entre otras— ocurre cuando una persona muestra conductas que causan daño físico, sexual o psicológico a otra persona[,] motivadas por los estereotipos de género creados por la sociedad". (Negrilla suplida). *Protocolo intergubernamental para coordinar la respuesta, orientación e intercambio de información para la atención de personas sobrevivientes de violencia de género en situaciones de violencia doméstica*, pág. 1.

cíclicos o recurrentes. <u>Pueblo v. Pérez Feliciano</u>, *supra*, págs. 1007-1008.

Por tanto, es menester reconocer que "[c]uando un [o una] sobreviviente toma la difícil decisión de salir del ciclo de violencia y denunciar a su agresor(a), ciertamente, comienza otro proceso, el cual, si no se toman las medidas apropiadas, puede convertirse en uno que victimiza nuevamente a la persona maltratada".[2] Exposición de Motivos de la Ley Núm. 18-2017, *Ley para enmendar la Ley para la Prevención e Intervención de la Violencia Doméstica* (2017 [Parte 1] Leyes de Puerto Rico 642). En consecuencia, la intervención de los tribunales y de las agencias debe enfocarse en salvaguardar la dignidad y seguridad de los(as) denunciantes, pues "aún prevalece una cultura de terror entre las víctimas y sobrevivientes de esta manifestación extrema de violencia, lo que provoca que en muchas ocasiones opten por el silencio [...]". Exposición de Motivos de la Ley Núm. 71-2024, *Enmiendas a la Ley para la Prevención e Intervención de la Violencia Doméstica* (2024 [Parte 1] Leyes de Puerto Rico 553).

---

[2] Estudios apuntan a que los juzgadores y las juzgadoras de hecho pueden desvirtuar la credibilidad de las sobrevivientes, basado tanto en interpretaciones imprecisas de su *demeanor* en sala, como estereotipos culturales negativos sobre las mujeres y sus justificaciones para procurar (o no) asistencia institucional. D. Epstein, L. Goodman, *Discounting Women: Doubting Domestic Violence Survivors' Credibility and Dismissing Their Experiences*, 167 U. Penn. L. Rev. 399, 400 (2019). Este patrón de adjudicación prematura de credibilidad tiene dos consecuencias nefastas: 1) la desacreditación del testimonio de los y las sobrevivientes de violencia de género es, a menudo, su propia lesión psíquica que hace eco al abuso que ya sufrió la víctima a manos de la persona agresora, y 2) la tendencia marcada de observar con suspicacia los testimonios de las y los sobrevivientes tiende a convertirse en un obstáculo independiente y poderoso para estas y estos procurar seguridad y justicia a través de las instituciones públicas. <u>Íd</u>.

Es por esto que todo(a) juzgador(a) de hecho, ante denuncias de violencia doméstica, ostenta el deber de identificar las referidas características distintivas para entender cómo sus sesgos implícitos podrían interferir con la tarea de adjudicación de credibilidad.[3] Véase *Imperativo Estratégico II: Igualdad y Equidad de Género en el Quehacer Judicial* del *Mapa de Género y Equidad del Poder Judicial*, pág. 16.

**B. Las fotografías como evidencia demostrativa ilustrativa de lesiones**

Las fotografías son un tipo de evidencia demostrativa ilustrativa de inmenso valor probatorio cuando estas se presentan para fines de, entre otras cosas, demostrar lesiones sufridas. Véase Pueblo v. Pacheco Stevenson, 83 DPR 842, 848 (1961). Estas explican y apoyan lo que declaran los y las testigos sobre hechos esenciales del caso. Pueblo v. Fournier, 80 DPR 390, 416 (1958), citando a Pueblo v. Torres, 75 DPR 231, 234 (1953). El origen de la evidencia demostrativa ilustrativa -tal como las fotografías- es inmaterial, pues su importancia radica en que sea de ayuda para hacer más comprensible otra evidencia, como un testimonio oral. Pueblo v. Nazario Hernández, 138 DPR 760,

---

[3] Al apreciar un hecho constitutivo de violencia de género, quien justiprecia el mismo debe evitar hacerlo precipitadamente. Ello, ya que pudiera caer en la trampa de caracterizar de implausibles los testimonios sobre el abuso que sufre la víctima, basado en una incomprensión tanto de los síntomas que surgen tras un trauma psicológico y neurológico, como de las limitaciones prácticas en las vidas y testimonios de estas. D. Epstein, L. Goodman, *Discounting Women: Doubting Domestic Violence Survivors' Credibility and Dismissing Their Experiences*, 167 U. Penn. L. Rev. 399, 399-400 (2019). Véase, también, L. Hecht Schafran, *Credibility in the Courts: Why is there a Gender Gap?*, Judges J., 1995, pág. 42.

775 (1995), citando a E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1983, Vol. I, pág. 514.

Salvo que nos encontremos ante una de las excepciones enumeradas por la Regla 403 de Evidencia, *infra*, aquellas fotografías pertinentes deben admitirse como prueba demostrativa ilustrativa. Regla 1101 de Evidencia, 31 LPRA Ap. VI. Véase, además, Pueblo v. Echevarría Rodríguez I, 128 DPR 299, 351 (1991).[4]

## II.

La valoración adecuada de la prueba en controversias relacionadas con violencia de género requiere reconocer las dinámicas particulares de esta modalidad de violencia. Ello resulta necesario para evitar que la apreciación de los hechos descanse, aun inadvertidamente, en concepciones erróneas o estereotipadas que pueden distorsionar el análisis de la prueba y conducir a inferencias ajenas a las circunstancias reales en que ocurre la violencia doméstica. Véanse, generalmente, V. Lutz, *A Guide to Domestic Violence Expert Testimony in Colorado*, 45 Colo. Law. 63 (2016); P. Malavet Vega, *La violencia doméstica en la Ley 54, la literatura, la canción y el cine*, Ed. Búho, República Dominicana, 2011. Considerar ese contexto no supone favorecer a una parte ni alterar las normas que rigen el proceso adjudicativo; procura, más bien, que la prueba se

---

[4] En Pueblo v. Echevarría Rodríguez I, 128 DPR 299 (1991), se discute, además, el requisito de autenticación de la evidencia demostrativa; no obstante, dada su naturaleza puramente representativa o instructiva, la evidencia demostrativa ilustrativa puede autenticarse por el(la) propio(a) testigo. Véase nota al calce 5.

examine racionalmente, conforme a su verdadero alcance y libre de premisas estereotipadas.

En el caso ante nos, excluir las fotografías presentadas por la agente Santana Ramos, disponible para testificar, y luego concluir a nivel apelativo que esta no resultó creíble es un error claro por parte de los foros recurridos. **Precisamente, es la contradicción evidente del proceder de la CIPA —excluir evidencia admisible que refuerza la credibilidad del testimonio de la sobreviviente para luego declarar su testimonio como carente de confiabilidad— lo que me mueve a expresarme hoy.**

Resulta innegable que, ante un testimonio sobre actos de violencia doméstica, las fotografías sobre las lesiones infligidas ilustran la severidad del daño causado y reafirman la credibilidad del testimonio de la víctima; esto, de por sí, debió ser suficiente para admitir las fotografías. Aun si fuese necesaria la autenticación de estas, harto es sabido que un(a) testigo con conocimiento de las fotografías puede autenticarlas.[5] No es necesario validar la cadena de custodia, toda vez que no se trata de evidencia demostrativa real, cuyo proceso de autenticación es más riguroso por el valor probatorio de esta yacer en su mismidad.[6]

---

[5] Según correctamente expone la *Opinión* mayoritaria, "[c]uando se trata de evidencia demostrativa ilustrativa, no se requiere más autenticación que el testimonio del testigo en términos de que la fotografía representa adecuadamente la escena a la que se refiere en su declaración". Opinión, págs. 17-18, citando a E.L. Chiesa Aponte, *Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y Federales,* República Dominicana, Ed. Corripio, 1988, T. II, pág. 1055.

[6] En cuanto a la evidencia demostrativa real, hay mayor rigor en el proceso de autenticación, pues "hay que satisfacer el requisito de

Por el contrario, la evidencia demostrativa ilustrativa encuentra su valor probatorio en aclarar el testimonio, pues este último es lo que el(la) juzgador(a), a fin de cuentas, considerará para tomar su determinación sobre credibilidad. Véase D. Epstein, L. Goodman, *Discounting Women: Doubting Domestic Violence Survivors' Credibility and Dismissing Their Experiences*, 167 U. Penn. L. Rev. 399, 404 (2019). La corroboración, aunque jurídicamente innecesaria, es, con demasiada frecuencia, el factor decisivo que marca la diferencia entre un fallo jurídico a favor o en contra de un(a) sobreviviente de violencia de género, ya que la dinámica de pareja pocas veces se revela de manera trasparente ante terceros. Íd., pág. 405. Negarle a la testigo la oportunidad de fortalecer su testimonio opera en directa contravención con los propósitos de búsqueda de la verdad y la justicia que propende la flexibilización de la aplicabilidad las Reglas de Evidencia en los procesos administrativos, según reseñados en la *Opinión* mayoritaria.

En el caso de la CIPA, su rol de recolección de evidencia y creación del expediente administrativo, ante alegaciones de violencia de género en contra de un(a) agente del orden público, cobra especial relevancia por los aspectos únicos de este tipo de violencia. Las fotografías, en particular, son la evidencia corroborativa más utilizada en los casos de violencia doméstica, utilizándose en un

---

mismidad establecido en la Regla 901(A) [de Evidencia]". Opinión, pág. 17, citando a E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, Puerto Rico, Ed. SITUM, 2016, pág. 394.

cuarenta y siete por ciento (47%) de las ocasiones. R.R.
Peterson & D. Bialo-Padin, *Domestic Violence is Different:
The Crucial Role of Evidence Collection in Domestic Violence
Cases*, 12 J. Police Crisis Negotiations 103, 107 (2012). Las
fotografías proveen un entendimiento visceral de las
lesiones sufridas por un(a) sobreviviente, e imponen sobre
la parte acusada la obligación de establecer una defensa
propia, en vez de esta descansar en la falta de
corroboración. Íd., pág. 113.

> [A photograph's] construction of the visual as evidence thus
> alerts us to a string of gendered processes through which
> the emotional, typically seen as distinct from a legal fact,
> materializes as not only relevant, but integral to truth
> finding in domestic violence prosecutions. […] These images
> emerge as "facts" that far outweigh a complainant's verbal
> testimony, ultimately silencing it in the event of a revised
> or recanted statement. For the same reasons, visual imagery
> will also provide powerful corroboration for those
> complainants who wish to proceed with the prosecution of
> cases. D. Moore; R. Singh, Seeing Crime, *Feeling Crime:
> Visual Evidence, Emotions, and the Prosecution of Domestic
> Violence*, 22(I) Theoretical Criminology 113, 122 (2018).

Así, su rol ilustrativo es crucial, particularmente en
ausencia de documentación sobre tratamiento médico recibido.
*Peterson & Bialo-Padin, op. cit.,* pág. 114.

La CIPA, mediante una aplicación injustificadamente
rígida de las Reglas de Evidencia —además de sustantivamente
errónea—, despojó a la agente Santana Ramos de la oportunidad
de utilizar prueba admisible y pertinente sobre su relato.
Esto no solo resulta contrario a la búsqueda de la verdad,
sino que revictimiza a la denunciante, quien también es
agente del orden público. Correspondía a la CIPA, como
juzgadora de hechos, admitir y valorar la evidencia
demostrativa ilustrativa conforme a su pertinencia y alcance
probatorio. El intento posterior del Tribunal de Apelaciones

de justificar su exclusión, bajo la premisa especulativa de que no habría alterado el resultado, no subsanó el error; por el contrario, perpetuó una valoración incompleta de la prueba y del testimonio de la denunciante.

Hoy rectificamos lo que fue un error craso en la adjudicación y reafirmamos que la prueba en controversias de violencia doméstica debe evaluarse en su totalidad, conforme al derecho aplicable y con conocimiento de las dinámicas particulares que caracterizan esta modalidad de violencia. Asimismo, reafirmamos el alto estándar de conducta exigible a quienes integran la Policía de Puerto Rico, cuya autoridad y responsabilidad pública requieren que sean merecedores de la confianza depositada en ellos como garantes del orden y de la seguridad pública.

Maite D. Oronoz Rodríguez
Jueza Presidenta